# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOHN W. SCHURKO )
           Movant, )
            )
v. )       **CR 03-10335 - MLW**
            )
UNITED STATES OF AMERICA, )
           Respondent. )

## MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255

### INTRODUCTION

Movant John W. Schurko, through undersigned counsel, respectfully moves this Court to vacate and correct his sentence pursuant to 28 U.S.C. § 2255.

On May 26, 2005, Mr. Schurko was sentenced to a term of 188 months for Armed Bank Robbery under 18 U.S.C. § 2113(d), having been found to be a career offender under U.S.S.G. §§ 4B1.1 & 4B1.2. In *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (hereafter *Johnson II*), the Supreme Court struck the residual clause of the Armed Career Criminal Act, *see* 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court found *Johnson* II retroactive to cases on collateral review. By logical extension, *Johnson II* invalidates the identically-worded residual clause of the career offender guideline. *See* U.S.S.G. § 4B1.2(a)(2).

After *Johnson II*, Mr. Schurko no longer qualifies as a career offender. He respectfully requests that this Court vacate his sentence and re-sentence him.

### STATEMENT OF FACTS AND PREDICATE OFFENSES

On December 1, 2004, Mr. Schurko pleaded guilty to a one-count superseding indictment charging Armed Bank Robbery under 18 U.S.C.§ 2113(d). The plea was tendered pursuant to a

plea agreement (which did not include a waiver of appellate rights). Dkt 51. The Probation

Department concluded that the substantive charge (armed bank robbery) as well as the

convictions listed in PSR ¶¶ 41 and 44 qualified him as a career offender. The convictions were

as follows:

> (¶ 41) Assault & Battery with a Dangerous Weapon, Boston Municipal Ct. Six Man Jury
> Dkt #886950 G, 1 year house of correction with 5 months to serve; and

> (¶ 44) Conspiracy to Commit Armed Bank Robbery under 18 U.S.C. § 371, attempted bank
> robbery under 18 U.S.C. § 2113(a), and possession of an assault weapon under 18 U.S.C. §
> 922(j); U.S. Dist. Ct., D.Mass. Dkt #95-10269- G, 84 months CAG.

On May 26, 2005, the district court adopted the findings of the presentence report and

sentenced defendant to 188 months in custody. *See Statement of Reasons* (ECF No. 65).

The district court's application of the career offender enhancement subjected Mr.

Schurko to a Sentencing Guidelines range of 188-235 months' imprisonment (corresponding to

offense level 31 and criminal history category VI). The district court sentenced Mr. Schurko to

188 months' imprisonment. Without a career offender finding, Mr. Schurko's Guidelines range

would have been 100-125 months' imprisonment (offense level 24, criminal history category

VI). PSR ¶¶ 30, 51.

Mr. Schurko requests that this Court vacate his sentence and schedule a resentencing

hearing.

## ARGUMENT

## I. *JOHNSON II* INVALIDATES THE RESIDUAL CLAUSE OF THE CAREER OFFENDER GUIDELINE

*Johnson II* looked at the ACCA residual clause language "otherwise involves conduct

that presents a serious potential risk of physical injury to another" and found it "hopeless[ly]

indetermina[te]," and "vague in all its applications." *Johnson II*, 135 S.Ct. at 2558, 2561. The

residual clause of the career offender guideline is identical to that of the ACCA. *Compare* 18

U.S.C. § 924(e)(2)(B)(ii), *with* U.S.S.G. § 4B1.2(a)(2). It too, under *Johnson II*, is unconstitutionally vague.

In *Johnson II* itself, the Court looked at four decisions interpreting the residual clause language in the § 4B1.2(a)(2) context (and only two in the ACCA context) to determine that it "has proved nearly impossible" for courts to "mak[e] sense of the residual clause." *Id*. at 2559-60 (internal quotation marks and citation omitted).[1] The Supreme Court, since *Johnson*, has vacated and remanded more than a dozen lower court decisions in which defendants had been sentenced under the guidelines' residual clause, including cases on collateral review.[2]

With the exception of the Eleventh Circuit, every circuit to have reached the issue has found that the Guidelines' residual clause, which is identical to the residual clause struck in *Johnson*, is void for vagueness. *See United States v. Madrid,* 805 F.3d 1204, 1211 (10th Cir. 2015) ("it stretches credulity to say that we can apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA"); *United States v. Welch*, No. 12-4402-CR L, 2016 WL 536656, at *4 (2d Cir. Feb. 11, 2016) (unpub.) (career offender residual clause invalid after *Johnson*, in light of the "identical" language in both clauses and the overlapping authority interpreting them); *United States v. Collins*, 799 F.3d 554, 596-97

---

[1] The four guidelines decisions were *United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013), *United States v. Whitson*, 597 F.3d 1218 (11th Cir. 2010), *United States v. McDonald*, 592 F.3d 808 (7th Cir. 2010), and *United States v. Williams*, 559 F.3d 1143 (10th Cir. 2009).

[2] *See, e.g., Caldwell v. United States*, 136 S. Ct. 417 (2015); *Banks v. United States*, 136 S. Ct. 365 (2015); *McCarthren v. United States*,  136 S. Ct. 332 (2015); *Gonzales v. United States*, 136 S. Ct. 84 (2015); *Cooper v. United States*, 135 S. Ct. 2938 (2015); *Maldonado v. United States*, 135 S. Ct. 2929 (2015); *Smith v. United States*, 135 S. Ct. 2930 (2015); *Vinales v. United States*, 135 S. Ct. 2928 (2015) *and Talmore v. United States*, 135 S. Ct. 2937 (2015) (direct review); *Beckles v. United States*, 135 S. Ct. 2928 (2015); *Denson v. United States*, 135 S. Ct. 2931 (2015); *Jones v. United States*, 135 S. Ct. 2944 (2015); *Jones v. United States*, 136 S. Ct. 333 (2015) *and Wynn v. United States*, 135 S. Ct. 2945 (2015) (collateral review).

(6th Cir. Aug. 24, 2015) (residual clause of the career offender guideline now invalidated);

*United States v. Townsend*, No. 14-3652, 2015 WL 9311394, at *4 (3d Cir. Dec. 23, 2015)

(unpub.) (agreeing with government that *Johnson* invalidated the residual clause of the career

offender guideline); *but see United States v. Matchett*, 802 F.3d 1185, 1193-94 (11th Cir. Sept.

21, 2015) (Guidelines not susceptible to vagueness challenges).[3] Other circuits, including the

First Circuit, have either accepted the government's concession that *Johnson* invalidates the

Guidelines' residual clause or have assumed without deciding that it does. *See, e.g., United*

*States v. Soto-Rivera*, 811 F.3d 53, 59-60 & n.8 (1st Cir. Jan. 22, 2016); *United States v. Pagan-*

*Soto*, No. 13-2243 (1st Cir. Aug. 27, 2015); *United States v. Castro-Vasquez*, 802 F.3d 28, 38

(1st Cir. 2015); *United States v. Talmore*, No. 13-10650, Order (9th Cir. Aug. 24, 2015); *United*

*States v. Taylor,* 803 F.3d 931, 933 (8th Cir. 2015) (remanding and noting that precedent holding

that Guidelines cannot be challenged for vagueness is doubtful after *Johnson*).

The Sentencing Commission, which imported the residual clause in § 4B1.2(a)(2)

verbatim from the ACCA,[4] has recognized that "the residual clause at §4B1.2 implicates many of

the same concerns cited by the Supreme Court in *Johnson*," and amended §4B1.2(a)(2) to strike

the clause.[5]

---

[3] *Matchett* has been widely criticized. "'[A]lthough the [G]uidelines are not statutes, district
courts must consider them,' and so the notion 'that the [G]uidelines cannot be unconstitutionally
vague because they do not proscribe conduct is doubtful after *Johnson.*'" *United States v. Soto-
Rivera*, 811 F.3d 53, 62 n.12 (1st Cir. 2016) (quoting *United States v. Taylor,* 803 F.3d 931, 933
(8th Cir. 2015) (per curiam) (brackets added by *Soto-Rivera*)).

[4] *See* USSG, App. C, Amend. 268 (1989); U.S. Sent'g Comm'n *Report on the Continuing Impact
of* United States v. Booker *on Federal Sentencing*, Pt. C (Career Offenders), at 4 (2012).

[5] U.S. Sent'g Comm'n, *Amendment on Crime of Violence*, Reason for Amendment at 2 (Jan. 8,
2016), *available at*:  http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-
friendly-amendments/20160121_RF.pdf

Finally, the government has conceded in cases across the country that *Johnson* invalidates the guideline's identical residual clause. *See, e.g.,* Response for United States, Oct. 29, 2015, *Ahern v. United States*, 1st Cir. Case No. 15-2176 at 6 ("the government agrees that *Johnson*'s holding that ACCA's residual clause is invalid applies to the identically worded residual clause in the career-offender sentencing guideline going forward"); *Soto-Rivera*, 811 F.3d at 58 (government "'acknowledge[d]' that the Guidelines's [sic] residual clause 'is unconstitutionally vague based on *Johnson*'").

## II.   *JOHNSON* HAS BEEN MADE RETROACTIVELY APPLICABLE TO CASES ON COLLATERAL REVIEW BECAUSE IT IS A SUBSTANTIVE RULE

New substantive rules apply retroactively on collateral review. *Montgomery v. Louisiana*, 136 S.Ct. 718, 728 (2016) ("courts must give retroactive effect to new substantive rules of constitutional law"); *see also Bousley v. United States*, 523 U.S. 614, 620 (1998) (retroactivity bar of *Teague v. Lane*, 523 U.S. 614 (1989) "applies only to procedural rules").

Substantive rules include those rules that "narrow the scope of a criminal statute by interpreting its terms," *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (citing *Bousley*), that "alter[] the range of conduct or the class of persons that the law punishes," *Schriro*, 542 U.S. at 353 (citing *Saffle*, 494 U.S. at 495), or that "prohibit a certain category of punishment for a class of defendants because of their status or offense," *Saffle*, 494 U.S. at 494 (internal quotation marks and citation omitted).

"Under this framework, the rule announced in *Johnson* is substantive." *Welch*, 136 S.Ct. at 1265. "*Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). *Johnson* is not a procedural decision because "it had nothing to do with the range of permissible methods a court might use to determine whether a

defendant should be sentenced under the Armed Career Criminal Act," but instead "affected the reach of the underlying statute[,] rather than the judicial procedures by which the statute is applied." *Id.*

If a new rule is substantive, it is categorically retroactive to *all* cases on collateral review. *See Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New constitutional rules announced by [the Supreme] Court that [are substantive or watershed rules of criminal procedure] must be applied in . . . all federal habeas corpus proceedings."); *Davis v. United States*, 131 S.Ct. 2419, 2430 (2011) (stating that retroactivity is a "categorical matter"); *Teague*, 489 U.S. at 316 (determining that a new rule must "be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated" (emphasis in original)); *accord Price*, 795 F.3d at 734 (because *Johnson* is substantive, it is "categorically retroactive" to cases on collateral review; *Watkins,* 810 F.3d at 381 (adopting same position).[6]

The courts of appeals have followed the same approach regarding the rule announced in *Johnson II*. The Eleventh Circuit has held in a Guidelines case that *Johnson* is substantive and would be retroactive to a first § 2255 petition. *In re Rivero*, 797 F.3d 986, 991(11th Cir. 2015). Six circuits have authorized second or successive § 2255 motions based on *Johnson* in career offender cases.[7] The Seventh Circuit explicitly authorized the motions because "*Johnson* announced a new substantive rule of constitutional law" which is thus "categorically

---

[6] *Cf. Spencer v. United States*, No. 10-10676, Supp. Br. for United States on Reh'g *En Banc* (May 21, 2014), at 56 (government arguing, in context of *Begay*, that it was not aware of any "chameleon-like rules" that "were substantive for some purposes and procedural for others.").

[7] *In re Hubbard,* No. 15-276, 2016 WL 3181417 (4th Cir. June 8, 2016); *Stork v. United States,* No. 15–2687, 2015 WL 5915990 (7th Cir. Aug. 13, 2015) (unpub.); *In re Grant*, No. 15-5795, slip op. at 2 (6th Cir. March 7, 2016); *In re Encinias*, No. 16-8038, 2016 WL 1719323, at *1-2 (10th Cir. Apr. 29, 2016); *In re Holston*, No. 16-50213, slip op. at 2 (5th Cir. May 17, 2016); *Wilson v. United States*, Case No. 15-73778 (9th Cir. June 1, 2016).

retroactive." *Stork v. United States*, No. 15-2687, 2015 WL 5915990, at *1 (7th Cir. Aug. 13, 2015).[8]  The Fourth Circuit issued a published opinion authorizing a second or successive motion, noting that *Welch* held that *Johnson* was substantive and retroactive and the "government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another."  *In re Hubbard,* No. 15-276, 2016 WL 3181417 at *6 (4th Cir. June 8, 2016) (citations omitted). Moreover, the court said that *Johnson* as applied to the guidelines was substantive: "striking down the residual clause [of the career offender guideline] … would alter the range of conduct or the class of persons that the [Sentencing Guidelines] punishes," as well as the "substantive reach" of the guideline, "just as much as was true for the ACCA." *Id.* at *7 (quoting *Welch*, 136 S.Ct. at 1265) (second set of brackets in original). The court rejected the government's argument that *Johnson* was procedural because it did not alter statutory ranges. *See id.*[9]

In this district, one court has issued an opinion holding that the invalidation of the Guidelines' residual clause pursuant to *Johnson II* is substantive and retroactive, because to refuse to apply the invalidation of the Guidelines residual clause retroactively "would carry the 'impermissibly large risk' . . . that the punishment exceeds what the defendant would have

---

[8] Courts of appeals decisions interpreting other ACCA-narrowing decisions in the context of Guidelines cases bear this out as well. As the Third Circuit aptly put it in holding that *Begay*, an ACCA case, was retroactive in a Guidelines case, "Under *Teague*, either a rule is retroactive or it is not." *United States v. Doe*, 810 F.3d 132, 154 n.13 (3d Cir. Dec. 9, 2015). The Ninth Circuit has followed the same approach, holding that a decision narrowing the scope of burglary under the ACCA was substantive and thus retroactive in a guidelines case. *See Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011). And the Seventh Circuit has held that *Begay* and *Chambers* are retroactive in Guidelines cases because they announced substantive rules in ACCA cases. *See Narvaez v. United States*, 674 F.3d 621, 625-26 (7th Cir. 2011); *Brown v. Caraway*, 719 F.3d 583, 594-95 (7th Cir. 2013).

[9] A panel of the First Circuit denied an application for permission raising a career offender claim in a non-precedential, unpublished 80-word order. *See Ahern v. United States*, No. 15-2176 (May 4, 2016).

received without the [career offender] designation." *United States v. Ramirez*, No. 10-10008-WGY, 2016 WL 3014646 at *9 (D.Mass. May 24, 2016), quoting *Teague v. Lane*, 489 U.S. 288, 312 (1989).

*Johnson II* is substantive in the present case. *Welch* clarified that "whether a new rule is substantive or procedural," *Welch*, 136 S.Ct. at 1266, "depends on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons the law punishes," *Id*. *Johnson II* "had nothing to do with the range of permissible methods a court might use to determine whether" a sentencing provision applies, but instead "changed the substantive reach" of the Career Offender guideline, thus "altering 'the range of conduct or the class of persons that the [Guideline] punishes.'" *Welch*, 136 S.Ct. at 1265. Because the residual clause of the guideline is invalid under *Johnson II*, "it can no longer mandate or authorize *any* sentence." *Welch*, 136 S.Ct. at 1265 (emphasis added).

Thus, *Johnson II* is retroactively applicable to all cases on collateral review under 28 U.S.C. § 2255(f)(3).[10]

## III. PETITIONER IS ENTITLED TO RELIEF UNDER § 2255

### A. Petitioner presents a timely, cognizable claim under *Johnson* II

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Mr. Schurko's career offender sentence was predicated on the residual clause, found unconstitutionally vague in *Johnson II*. "[I]mposing an increased sentence under the residual clause . . . violates the Constitution's

---

[10] It is undisputed that the rule in *Johnson* is new. *See, e.g., In re Watkins*, 810 F.3d 375, 380 (6th Cir. 2015).

guarantee of due process." *Johnson*, 135 S.Ct. at 2563. Thus, Mr. Schurko's claim for relief is

cognizable under the plain language of § 2255(a).[11]

This claim is timely filed within one year of the decision in *Johnson II*. *See* 28 U.S.C. §

2255(f)(3) (claims may be filed within one year of the date when a new right "was initially

recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court

and made retroactively applicable to cases on collateral review").

### B.      Mr. Schurko Is Entitled To Relief Because After *Johnson*, He Is No Longer A Career Offender

Absent the residual clause, a predicate only qualifies as a "crime of violence" if it

qualifies under the force clause, U.S.S.G. §4B1.2(a)(1).[12] The inquiry asks whether the offense

"has as an element the use, attempted use, or threatened use of physical force against the person

of another." "'[P]hysical force' means *violent* force – that is, force capable of causing physical

pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson*

*I*") (emphasis in original). The use of force must be intentional, not just reckless or negligent. *See*

*United States v. Fish*, 758 F.3d 1, 9-10 & n.4 (1st Cir. 2014); *Whyte v. Lynch*, 807 F.3d 463, 468

(1st Cir. 2015).

In determining whether an offense is a crime of violence, courts follow a

categorical approach, which requires an assessment of "the elements of the statute of conviction,

not ... the facts of each defendant's conduct." *Taylor v. United States*, 495 U.S. 575, 601 (1990)

---

[11] Unlike other grounds for relief under 28 U.S.C. § 2255(a), there is no requirement that constitutional error also constitute a "miscarriage of justice." *See Narvaez v. United States*, 674 F.3d 621, 623 n.2 (7th Cir. 2011) ("miscarriage of justice" standard applies only to "a non-jurisdictional, non-constitutional error of law"); *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015) (same); *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011); *Coleman v. United States*, 763 F.3d 706, 708 (7th Cir. 2014).

[12] None of the offenses enumerated in U.S.S.G. § 4B1.2(a)(2) is at issue here.

(ACCA context); *see also, United States v. Castro-Vazquez*, 802 F. 3d 28, 35 (1st Cir. 2015) (career offender). The court asks whether "conduct criminalized by the statute, *including the most innocent conduct*, qualifies as a crime of violence." *Fish*, 758 at 5 (emphasis added) (internal quotation marks and citation omitted). If a statute is divisible into distinct sets of elements, some of which satisfy the crime of violence definition and some of which do not, courts may employ the modified categorical approach, consulting a limited set of judicial documents to determine "which of a statute's alternative elements formed the basis" of the conviction. *Descamps v. United States,* 133 S.Ct. 2276, 2284 (2013). But, as with the charges at issue here, bank robbery and assault and battery with a dangerous weapon, "when a statute, instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more) of them … the [sentencing] court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." See *Mathis v. United States*, 579 U. S. ____ , Slip op. at *16-*17 (June 23, 2016).

1.      **The Crime of Conviction, Armed Bank Robbery Under 18 U.S.C. § 2113(d), Is No Longer A Crime Of Violence.**

A person commits bank robbery by taking money from a bank by "force and violence, or by intimidation," 18 U.S.C. § 2113(a), and commits armed bank robbery if, in the course of the offense, he "assaults" or "puts in jeopardy the life of any person by the use of a dangerous weapon or device." *Id.* § 2113(d). As shown below, neither bank robbery in violation of § 2113(a), nor armed bank robbery in violation of § 2113(d), necessarily always has "as an element the use, attempted use, or threatened use of physical force against the person of another" under U.S.S.G. § 4B1.2(a)(1).

a.      **Section 2113(a) does not have as an element the use, attempted use, or threatened use of physical force.**

Taking or extorting money "by force and violence, or by intimidation," 18 U.S.C. § 2113(a), is not a crime of violence for two reasons. First, intimidation is satisfied "if an ordinary person in the bank teller's position could reasonably infer a threat of bodily harm." *United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010). Even assuming that placing another in fear of bodily harm constitutes a threat of physical injury, threatening physical injury does not require a threat to use violent physical force. *See Whyte v. Lynch*, 807 F.3d 463, 468-69 (1st Cir. 2015) (statute requiring the intentional causation of injury did "not contain as a necessary element the use, attempted use, or threatened use of violent force" because "force need [not] be employed to cause the injury"); *United States v. Torres-Miguel*, 701 F.3d 165, 168-69 (4th Cir. 2012) ("a crime may result in death or serious injury without involving use of physical force," as in poisoning someone (emphasis in original); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194-96 (2d Cir. 2003).

Second, intimidation does not require an intentional threat of violent force. "Intimidation is measured under an objective standard, and, therefore, whether the bank robber intended to intimidate the bank teller is irrelevant," *Pickar*, 616 F.3d at 825; *see also U.S. v. Henson*, 945 F.2d 430, 439-440 (1st Cir. 1991).

4.18 of the First Circuit Pattern Jury Instructions for Unarmed Bank Robbery states:

"'Intimidation' is actions or words used for the purpose of making someone else fear bodily harm if he or she resists. The actual courage or timidity of the victim is irrelevant. The actions or words must be such as to intimidate an ordinary, reasonable person."

Thus, to convict of unarmed bank robbery the jury need not find that the defendant used, attempted to use, or threatened to use violent physical force. See *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir. 2005); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (no requirement that defendant have an intent to intimidate).

With regard to instilling fear of bodily harm, an opinion by the Fourth Circuit Court of Appeals is instructive. *United States v. Torres-Miguel*, 701 F.3d 165, 167-171 (4th Cir.2012), held that a California prohibition against willfully threatening to commit a crime which "will result in death or great bodily injury to another" was not an aggravating crime of violence under the illegal re-entry guideline, noting that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force." 701 F.3d at 168. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. 701 F.3d at 168-69. The court held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id*. at 168. The court noted that "of course, a crime may result in death or serious injury without involving use of physical force." *Id.*

The *Torres-Miguel* court discussed the Second Circuit Court of Appeals decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). At issue in that case was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause in 18 U.S.C. § 16(b). The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the Second Circuit held that the statute did not constitute a crime of violence because there is a difference between causation of an injury, which is all that the Connecticut statute required, and an injury's causation by the use of physical force." *Chrzanoski*, 327 F.3d at 194

Although federal bank robbery can be accomplished by putting another in fear of bodily harm, it does not require intentional "violent force." "Intimidation" as used in the bank robbery

statute does not constitute a "crime of violence" under the force clause because it does not require an intentional use, attempt, or threat of physical force. Because the full range of conduct covered by 18 U.S.C. § 2113(a) does not require purposeful "violent force," it cannot qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(1). See *United States v. Martinez*, 762 F.3d 127, 133 -135 (1st Cir. 2014). It is well settled that the "intimidation" element of federal bank robbery is missing an intentional *mens rea*. "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Woodrup*, 86 F.3d 359, 364 (4th Cir. 1996). See also *United States v. Yockel*, 320 F.3d 818, 821 (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); *United States v. Kelley*, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

The statute is analogous to the Massachusetts armed robbery statute. In *United States v. Parnell,* 2016 U.S. App. LEXIS 6627 (9th Cir. April 12, 2016), the Court found that the level of force required to violate the Massachusetts armed robbery statute was only that the force be sufficient to obtain the victims property against his will, and that it is sufficient if the victim is aware of the force. *Id.* at 5. Therefore the level of force sufficient to violate the statute did not rise to the level of violent force, "that is force capable of causing physical pain or injury to

another person", which is necessary to establish the level of force described in 18 U.S.C. § 924(e) (2)(B)(i). *Id.* The Court did so using the "categorical" approach looking at only the fact of conviction and the elements of the statute. *Id.* at 4. The Court used this approach because, 18 U.S.C.§ 2113, like the Massachusetts statue, is not divisible. *Id.*

      **b.**      **Section 2113(d) does not have as an element the use, attempted use, or threatened use of physical force.**

Whoever "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device" during the course of a bank robbery is guilty of armed bank robbery under § 2113(d). With this additional element, armed bank robbery still does not qualify as a crime of violence under the force clause of § 924(c)(3)(A).

First, "assault" means "to threaten bodily harm…." *See Pattern Jury Inst.* 4.18. As discussed above, threatening bodily harm need not involve a threat to use violent physical force. Further, armed bank robbery may be accomplished without any force at all—merely carrying or exhibiting a firearm is sufficient to sustain a conviction under § 2113(d). *See, e.g., United States v. Whitfield*, 695 F.3d 288, 304 (4th Cir. 2012) (carrying guns during attempted bank robbery held sufficient to violate the statute).

To determine when the requisite danger is created, then, courts have engaged in analysis that echoes the residual clause of § 924(c)(3)(B). *See, e.g., McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986) (unloaded gun was dangerous weapon under § 2113(d) because "display of a gun instills fear in the average citizen," and "creates an immediate danger that a violent response will ensue"); *United States v. Bennett*, 675 F.2d at 599 (same); *United States v. Cannon*, 903 F.2d 849, 854-55 (1st Cir. 1990) (toy gun supports § 2113(d) conviction because it "creates some of the same risks" as a loaded gun, including "a likelihood that the reasonable response of police and guards will include the use of deadly force"); *United States v. Benson*, 918 F.2d 1, 3

(1st Cir. 1990) (feigning having a gun was tantamount to "using a dangerous device" because it would create an "immediate danger that a violent response [would] ensue").

In *United States v. McNeal*, --F. 3d--, 2016 U.S. App. LEXIS 5701, *25-36 (4th Cir. March 28, 2016), the court found that armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) was a crime of violence.  See also *United States v. McBride*, Nos. 15-3759/ 3761/ 3762 (6th Cir. June 10, 2016).  The Court focused on a prior ruling in *United States v. Presley,* 52 F.3d 64 (4th Cir. 1995) where it equated "intimidation" with "threatened use of physical force".  The ruling ignores the *Johnson I* mandate that "physical force" means "violent force". A person can be convicted of bank robbery if he unintentionally intimidates a bank teller without the use, threatened use, or attempted use of violent force in accomplishing the bank robbery.  Through the lens of *Johnson I*, *McNeal* is unpersuasive.

The *McNeal* decision incorrectly collapses the formally significant (though also narrowly technical) distinction between intentionally engaging in conduct of the sort that will ordinarily cause fear and intentionally causing fear in a particular person as a means to a particular end. As discussed below, as a formal matter, § 2113(a) does not require a jury to distinguish between the person who obtains money by intentionally threatening harm and a person who obtains money after engaging in conduct that creates a reckless risk of causing a specific person to feel afraid. As long as the conduct is sufficient to make an ordinary person to feel afraid, the statute is satisfied. Consequently, while as a practical matter bank robbery by intimidation may ordinarily involve the use of threats, such a threat is not a necessary element of the offense as § 4B1.2(a) requires.

The distinction between behaving in a manner that would produce fear in a reasonable person (intimidation) and intentionally threatening a person is illustrated by *Elonis v. United*

*States,* 135 S. Ct. 2001 (2015), in which the Supreme Court provided both an explanation of

*Carter v. United States*, 530 U.S. 255 (2000) and distinguished the "general intent" that satisfies

§ 2113(a) from an intentional threat.[13] As the *Elonis* court explained, "[w]hen interpreting

federal criminal statutes that are silent on the required mental state, we read into the statute 'only

that mens rea which is necessary to separate wrongful conduct from "otherwise innocent

conduct.""" *Elonis*, 135 S. Ct. at 2010 (quoting Carter). With respect to § 2113(a) specifically,

the *Elonis* court elaborated:

> We held [in Carter] that once the Government proves the defendant forcibly took the
> money, "the concerns underlying the presumption in favor of scienter are fully satisfied,
> for a forceful taking—even by a defendant who takes under a good-faith claim of right—
> falls outside the realm of ... 'otherwise innocent' " conduct.

*Id*. (quoting *Carter*). Per *Elonis,* because the acts that trigger § 2113(a) are not inherently

innocent, there is no need under the statute to inquire further of the defendant's mental state with

respect to the character of the action. As a formal matter, consequently, to find a defendant guilty

of bank robbery by intimidation under *Carter*, a jury need never determine anything beyond

whether the defendant walked out of a bank holding money obtained through conscious action of

the sort that would make an ordinary person afraid for his or her safety. The jury never need

determine whether the defendant intentionally threatened physical harm in order to cause such

fear in any particular person. By contrast, where a criminal statute proscribes causing fear

through an *actus reus* that may by itself be innocent, then a conviction may only be sustained by

a more robust showing of a culpable mental state. *Elonis* addressed 18 U.S.C. § 875(c)

---

[13] In *Carter* the §2113(a) robbery defendant had requested a jury instruction for the lesser
included offense of Larceny under §2113(b). The Court noted that scienter generally requires
the court to read into the statute only that *mens rea* which is necessary to separate wrongful
conduct from otherwise innocent conduct. Thus in a bank robbery the statute requires only
proof of knowledge of the crime's *actus reus*, the taking of property through force, violence, or
intimidation. There is therefore no specific intent requirement. *Id.* At 268 – 269.

forbidding the transmission of "any communication containing any threat ... to injure the person of another." The Court held that a conviction under this statute could not be sustained by a mere showing of general intent to transmit a communication that a reasonable person would interpret as threatening. 135 S. Ct. at 2012. A contrary rule, the Court explained, would wrongly criminalize possibly innocent conduct—the mailing of communication—that the defendant did not intend to be threatening. *Elonis,* 135 S. Ct. at 2011

*McNeal* does not consider that § 2113(a) may be triggered by force directed at property rather than people. A violation of § 2113(a) may be committed by physically assaulting a bank teller in order to force him or her to hand over money from a register. The same offense may also be committed by breaking through a partition and snatching money from a register that had been left unattended by a teller. The first scenario satisfies the force clause of U.S.S.G. § 4B1.2(a). The second does not. Because § 2113(a) contemplates scenarios, however unusual, in which bank robbery may occur in a manner that falls outside the scope of § 4B1.2(a), a violation of this statute cannot satisfy § 4B1.2(a) and so cannot trigger a sentencing enhancement under U.S.S.G. § 4B1.1.

In sum, Bank Robbery can be accomplished by putting another in fear of physical injury; this does not require "violent force."  If threat of serious bodily injury or death does not equal violent force, then certainly, threat of "physical injury" does not.  Indeed, a defendant can place another in fear of injury by threatening to poison that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter – some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."

Because the full range of conduct covered by the Bank Robbery statute does not require "violent force" against persons or property, it simply cannot qualify as a "crime of violence" under § 4B1.2(a)(1)'s force clause.

2.    **The Predicate Offense of Assault and Battery with a Dangerous Weapon (PSR ¶ 41) Lacks the Requirement of Violent Force.**

The First Circuit has found Massachusetts Assault and Battery with a Dangerous Weapon (ABDW) to be a crime of violence under the residual clauses of the ACCA and the sentencing guidelines. *United States v. Hart*, 674 F.3d 33 (1st Cir. 2012); *United States v. Glover*, 538 F.3d 71 (1st Cir. 2009). It has never held that ABDW is a crime of violence under the elemental, or force, provision of either residual clause. Rather, it has held that ABDW does *not* qualify as a crime of violence under the similarly worded "elements" clause of the "crime of violence" provision in 18 U.S.C. §16. *United States v. Fish*, 758 F.3d 1 (1st Cir. 2014). *See also United States v. Parnell*, 818 F.3d 974, 981 n.5 (9th Cir. 2016) (Mass. ABDW does not satisfy ACCA force clause). *See United States v. Luna*, 649 F.3d 91, 108-109 (1st Cir. 2011) and *United States v. Whindleton*, 797 F.3d 105 (1st Cir. 2015).

Under the categorical analysis first set out in *Taylor v. United States*, 495 U.S. 575 (1990), the court examines the elements of the offense "'to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a crime of violence' [citations omitted]". *Fish*, 758 F.3d at 5. If those elements do not necessarily give rise to an offense meeting the criteria for a crime of violence, the statute is overbroad. *See also United States v. Ramos-Gonzalez*, 775 F.3d 483, 504 (1st Cir. 2015) ("Under the categorical approach, an offense constitutes a crime of violence 'only if its elements are such that we can conclude that a person convicted of the offense has "necessarily" been found guilty of conduct that meets the

[§4B1.2(a)] definition.' [citation omitted] The categorical approach limits the court's inquiry to 'the elements of the statute of conviction, not...the facts of each defendant's conduct.' [citations omitted].").

As this Court found in *Fish*, addressing 18 U.S.C. §16, Massachusetts ABDW did not meet this categorical test. *Johnson I* requires that physical force be "*violent* force - that is, force capable of causing physical pain or injury to another person." 599 U.S. at 140 (emphasis in original). As explained in *Fish*, "[S]ince ABDW may be accomplished by a mere 'touching, however slight,' [citation omitted] it does not have 'as an element the use' of physical force. As a result, it is overbroad." *Fish*, 758 F.3d at 9.

The Massachusetts district court jury instruction for intentional ABDW supports this conclusion, requiring proof that: *"First*: That the defendant touched the person of [alleged victim], however slightly, without having any right or excuse for doing so; *Second*: That the defendant intended to touch [alleged victim]; and *Third*: That the touching was done with a dangerous weapon." *See* http://www.mass.gov/courts/docs/courts-and-judges/courts/district-court/juryinstructions-criminal/6000-9999/6300-assault-and-battery-by-means-of-adangerous-weapon.pdf.

So instructed, a jury never need find as an element the use of violent force required by *Johnson I*. Because ABDW may be premised on a touching no matter how slight, it is overbroad and does not qualify as a categorical crime of violence. *See Commonwealth v. Appleby*, 380 Mass. 296, 306 (1980).

Moreover, assault and battery with a deadly weapon lacks the required *mens rea* because it may be committed recklessly. *Fish* concluded that a *mens rea* of recklessness could not establish that physical force may be used in committing an offense (758 F.3d at 9-10). Other

Circuits have held that the "use of physical force" clauses of both the ACCA (18 U.S.C.

§924(e)(2)(B)(i)) and the federal sentencing guidelines (U.S.S.G. §4B1.2(a)(1) and other

guidelines provisions employing the same definition) require more than reckless conduct. *See*

*United States v. Boose*, 739 F.3d 1185, 1188 (8th Cir. 2014) (U.S.S.G. §4B1.2(a)(1)); *United*

*States v. McMurray*, 653 F.3d 367, 374-375 (6th Cir. 2011) (ACCA); *United States v.*

*Palomino Garcia*, 606 F.3d 1317 (11th Cir. 2010) (U.S.S.G. §2L1.22); *United States v. Valdez-*

*Martinez*, 295 Fd.Appx. 832 (7th Cir. 2008) (U.S.S.G. §2L1.2); *United States v. Zuniga-Soto*,

527 F.3d 1110 (10th Cir. 2008) (U.S.S.G. §2L1.2).

Accordingly, post-*Johnson*, Massachusetts ABDW does not categorically qualify as a

crime of violence.

### 3. Conspiracy to Commit Bank Robbery (18 U.S.C. § 371) is not a Crime of Violence

Federal conspiracy to commit a crime is defined as follows:

> If two or more persons conspire either to commit any offense against the
> United States, or to defraud the United States, or any agency thereof in
> any manner or for any purpose, and one or more of such persons do any
> act to effect the object of the conspiracy, each shall be fined under this
> title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

All that is required to prove the offense are an agreement and an overt act in furtherance

of the objective. The offense is complete upon agreement and does not require the element of

use, attempted use, or threatened use of physical force. Similarly, the overt act required by the

statute need not involve the qualities specified in the ACCA and U.S.S.G. § 4B1.2; indeed it

need not even be criminal:

> In order for the government to satisfy this element, it must prove, beyond a
> reasonable doubt, that at least one overt act was knowingly and willfully done, by
> at least one conspirator, in furtherance of some object or purpose of the

conspiracy, as charged in the indictment. In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which, in and of itself is criminal or constitutes an objective of the conspiracy.

Sand, et al., *Modern Federal Jury Instructions-Criminal* § 19.01.

Thus, by its own terms a § 371 conspiracy offense standing alone does not have as an element the use, attempted use or threatened use of physical force. *See United States v. Melvin*, 621 F. App'x 226 (4th Cir. 2015) (after *Johnson*, North Carolina conspiracy to commit robbery with a dangerous weapon does not have as an element the use or threatened use of physical force under the ACCA's force clause); *United States v. Gonzalez-Ruiz*, 794 F.3d 832, 833 (7th Cir. 2015) (Massachusetts conspiracy to commit armed robbery not a violent felony); *United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011) (Texas conspiracy to commit aggravated robbery not a violent felony under ACCA force clause).

In any event, as explained below, even the completed offense of federal armed robbery does not categorically require the use, attempted use, or threatened use of physical force. Therefore a § 371 conspiracy charge where bank robbery is the object is not categorically a crime of violence.

## CONCLUSION

After *Johnson II*, and in the wake of the just-issued opinion in *Mathis v. United States*, 579 U. S. ____ , Slip op. (June 23, 2016), Mr. Schurko no longer qualifies as career offender. He respectfully requests that this Court vacate his sentence and re-sentence him.

Respectfully Submitted,
JOHN SCHURKO
By his attorney,

s/ Charles P. McGinty
Charles P. McGinty
 BBO #333480
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 24, 2016.

*/s/ Charles P. McGinty*